

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DEBRA A. DORSEY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | NO. 3:13-CV-2165-BF |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Commissioner of Social Security | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Debra Ann Dorsey brings this action for judicial review of the Commissioner of Social Security's ("Commissioner's") final decision denying her claim for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act (the "Act"). For the following reasons, the Commissioner's decision is AFFIRMED.

### Background

Plaintiff alleges that she is disabled due to a variety of ailments, including depression with psychotic features, anxiety, angina, hyperglycemia, abnormal liver enzymes, and a stroke. After her application for SSI benefits was denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). That hearing was held on October 28, 2011. At the time of the hearing, Plaintiff was 49 years old. She has less than a high school education and past work experience as a hospital cleaner. Plaintiff has not engaged in substantial gainful activity since October 19, 2009.

The ALJ found that Plaintiff was not disabled and therefore not entitled to SSI benefits. Although the medical evidence established that Plaintiff suffered from major depressive disorder,

anxiety disorder, post-traumatic stress disorder, asthma, and alcohol abuse, the ALJ concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. The ALJ further determined that Plaintiff had the residual functional capacity ("RFC") to perform the full range of work at all exertional levels, with only certain non-exertional and environmental limitations. Relying on the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff was capable of performing her past relevant work as a hospital cleaner. In the alternative, the ALJ found that Plaintiff was capable of working as a hand packager, a laundry worker, and an industrial cleaner -- jobs that exist in significant numbers in the national economy. Plaintiff appealed that decision to the Appeals Council. The Council affirmed.

Plaintiff filed this action in federal district court challenging the hearing decision on two general grounds: (1) the ALJ improperly rejected the opinions of her treating and examining physicians; and (2) the ALJ's finding that she is capable of performing her past relevant work or other work in the national economy was based on an improper hypothetical to the VE. The issues have been fully briefed by the parties, and this matter is ripe for determination.

## Legal Standards

A claimant must prove that he is disabled for purposes of the Social Security Act to be entitled to social security benefits. *Leggett v. Chater*, 67 F.3d 558, 563-64 (5th Cir. 1995); *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Act is "the inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

2

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled. Those steps are that:

(1) an individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings;

(2) an individual who does not have a "severe impairment" will not be found to be disabled;

(3) an individual who meets or equals a listed impairment in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors;

(4) if an individual is capable of performing the work the individual has done in the past, a finding of "not disabled" will be made; and

(5) if an individual's impairment precludes the individual from performing the work the individual has done in the past, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

*Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citing *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990) (paraphrasing 20 C.F.R. § 404.1520(b)-(f)).

The burden of proof lies with the claimant to prove disability under the first four steps of the five-step inquiry. *Leggett*, 67 F.3d at 564. The burden of proof shifts to the Commissioner at step five of the inquiry to prove that other work, aside from the claimant's past work, can be performed by the claimant. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (citing *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989)). If the Commissioner demonstrates that other jobs are available to the claimant, the burden of proof shifts back to the claimant to rebut such a finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).

The Commissioner's determination is afforded great deference. *Leggett*, 67 F.3d at 564. Judicial review of the Commissioner's findings is limited to whether the decision to deny benefits was supported by substantial evidence and to whether the proper legal standard was utilized. *Greenspan*, 38 F.3d at 236; 42 U.S.C.A. § 405(g). Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564. The reviewing court does not re-weigh the evidence, retry the issues, or substitute its own judgment, but rather scrutinizes the record as a whole to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

## Analysis

Succinctly stated, Plaintiff argues that remand is required because the ALJ improperly rejected the medical opinions of her treating and examining physicians without good cause and improperly relied upon the answer to a defective hypothetical question to determine that she is not disabled. Defendant responds that the Commissioner's decision should be affirmed because the ALJ followed the correct legal standards and his decision is supported by substantial evidence. The Court addresses the parties' arguments in turn.

## Treating Physician's Opinion

Plaintiff first contends that the ALJ improperly rejected the opinion of Ikechukwu Ofomata M.D., a psychiatrist and the attending clinician for her mental health provider Metrocare Services. *See* Tr. at 601. On July 21, 2011, Dr. Ofomata completed a Physician's Statement in which he opined that Plaintiff was unable to work due to her mental limitations. *Id.* at 603. According to Dr. Ofomata, Plaintiff's major depressive disorder was so severe that it would prevent her from

4

performing even sedentary work for at least one year. *Id.* Three months later, on October 20, 2011, Dr. Ofomata completed a more detailed Medical Assessment of Ability to do Work-Related Activities (Mental) in which he similarly opined that Plaintiff's limitations would preclude her from working in the national economy. *Id.* at 599-601. More specifically, Dr. Ofomata determined that Plaintiff was "substantially" impaired with respect to her ability to understand and carry out instructions, interact appropriately with the general public, ask simple questions, and behave in an emotionally stable manner. *Id.* at 599-600. He further rated Plaintiff as having "no useful ability" to sustain concentration and persistence, respond appropriately to supervision and co-workers, or adapt to changes in a routine work setting. *Id.* Dr. Ofomata also opined that Plaintiff would miss four or more days of work per month due to exacerbation of her mental impairments. *Id.* The ALJ considered Dr. Ofomata's opinions, but gave them "little weight" in his disability determination. *Id.* at 19.

The opinion of a treating source is generally entitled to controlling weight so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see also Spellman v. Shalala*, 1 F.3d 357, 364 (5th Cir. 1993). Even if a treating source opinion is not given controlling weight, it still is entitled to deference "and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927." SSR 96-2p, 1996 WL 374188 at *4 (SSA July 2, 1996); *see also Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000). These factors require consideration of:

    (1)    the physician's length of treatment of the claimant;

    (2)    the physician's frequency of examination;

5


> (3)     the nature and extent of the treatment relationship;
>
> (4)     the support of the physician's opinion afforded by the medical evidence of record;
>
> (5)     the consistency of the opinion with the record as a whole; and
>
> (6)     the specialization of the treating physician.

See 20 C.F.R. § 404.1527(d). A treating source opinion cannot be rejected absent good cause for reasons clearly articulated in the hearing decision. See Myers v. Apfel, 238 F.3d 617, 621 (5th Cir. 2001). More specifically, the ALJ must clearly articulate the weight given to the treating source opinion:

> [T]he notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188 at *4-5.

In his written decision, the ALJ summarized Dr. Ofomata's opinions and explained why he assigned them "little weight:"

> The statement from [July] 2011 indicates that the claimant is disabled. The undersigned accords this statement little weight, as the determination of disability is a legal determination reserved to the Commissioner. As this statement described no functional limitations it requires no further analysis.
>
> The October 2011 statement indicated that the claimant's symptoms would cause more than four absences per month, and that these symptoms prevented her from interacting appropriately with others. The undersigned accords this opinion little weight, as it is inconsistent with the records that show the claimant doing well when medically complaint. Furthermore, there is no evidence to indicate

>that the treating psychiatrist has seen and examined the claimant since March 2010, shortly after her psychiatric hospitalization.

Tr. at 19. While terse, this explanation constitutes "good cause" for giving Dr. Ofomata's opinions limited or no credence. Although the ALJ did not make a specific finding as to each of the factors set forth in 20 C.F.R. § 404.1527(d)(2), he cited to the applicable regulations and demonstrated that the relevant factors had been considered. *Id.* at 17, 19. The regulations require only that the Commissioner "apply" the section 1527(d)(2) factors and articulate good reasons for the weight assigned to a treating source opinion. *See* 20 C.F.R. § 404.1527(d)(2). The ALJ need not recite each factor as a litany in every case.

Contrary to Plaintiff's assertion, the ALJ properly rejected Dr. Ofomata's July 2011 opinion that Plaintiff is disabled. *Id.* at 603. The mere assertion by a medical provider that an individual is not "able to work" is not a medical opinion and, thus, has no special significance. 20 C.F.R. § 404.1527(e)(1); *see also Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (determination that claimant is "unable to work" is a legal conclusion reserved to the Commissioner). Plaintiff's argument that the ALJ failed to specifically mention that part of Dr. Ofomata's opinion which states that she cannot meet the demands of part-time, light duty, or sedentary work draws a distinction without a difference. The essence of Dr. Ofomata's one-page statement is that Plaintiff is disabled. *See* Tr. at 603. The ALJ properly rejected that opinion because Plaintiff's disability status under the Act is an issue reserved exclusively to the Commissioner. *Barr v. Astrue*, No. 311-CV-1349-BF, 2012 WL 2358307, at *4 (N.D. Tex. June 21, 2012); *Dutton v. Comm'r Soc. Sec. Admin.*, No. 3:10-CV-02386-BF, 2012 WL 612536, at *7 (N.D. Tex. Feb. 24, 2012).

Plaintiff also takes exception to the ALJ's statement that Dr. Ofomata's October 2011 opinion is "inconsistent with the records that show the claimant doing well when medically compliant." Tr. at 19. Plaintiff objects that the ALJ ignored that portion of Dr. Ofomata's Assessment that attempts to reconcile clinical notes that Plaintiff was "stable on meds," "doing OK," or "doing well" with the severe limitations assessed. According to Dr. Omofata, such notes do not conflict with a finding of disability because Plaintiff suffered from a mental impairment that "resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate." *Id.* at 601. The ALJ has the primary responsibility for resolving conflicts in the evidence. *Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991). The Court accepts the ALJ's resolution of evidentiary conflicts so long as that resolution is supported by substantial evidence. *Newton*, 209 F.3d at 452. Here, the record contains numerous notes by Plaintiff's treating and examining medical sources that her condition improved when she was compliant with her medication. *See, e.g.*, Tr. at 433, 434, 437, 462, 484-85, 514-15, 519, 568, 581, 619, 624, 636-37; *cf. id.* at 565 (depressive symptoms increased when noncompliant). Also, in May 2000, Daniel Pearson, M.D., a consultative psychological examiner, determined that, while Plaintiff's prognosis was "very guarded," her symptoms would continue to improve with treatment. *Id.* at 437. The ALJ's decision to give Dr. Omofata's October 2011 opinion little weight because it was inconsistent with the medical evidence is thus supported by substantial evidence, and remand is not required.

### Consultative Examiner's Opinion

Plaintiff next argues that the ALJ erred in rejecting portions of Dr. Pearson's opinion without good cause and without resolving the conflict between Dr. Pearson's medical opinion and the ALJ's

RFC determination. Specifically, Plaintiff challenges the ALJ's conclusion that Dr. Pearson's assessment of Plaintiff's condition was "consistent with no more than moderate symptoms." Tr. at 18. Plaintiff asserts that this conclusion ignores Dr. Pearson's observation that Plaintiff has "serious symptoms in her work function," including poor concentration and slow pace. *See id.* at 436-37.

Plaintiff's argument mischaracterizes the ALJ's written decision, which recites, in pertinent part:

> At the second consultative examination, in May 2010, the claimant reported significant improvement in her condition: her medication was making "a big difference," she was sleeping better, her concentration was improving, and she was feeling more optimistic. She further reported that she was mentally fairly good, and enjoying greater social involvement. A mental status examination showed good memory but poor concentration. The claimant did however indicated that she had consumed no alcohol since June 2009. Considering her family history, the consulting examiner gave diagnoses of major depression in partial remission, PTSD, panic disorder without agoraphobia, and alcohol abuse, in apparent remission. He assigned the claimant a GAF of 51. This GAF is consistent with no more than moderate symptoms, and as it is consistent with the records that show the claimant was responding well to treatment, it further indicates no mental impairment of disabling severity.

*Id.* at 18. This portion of the ALJ's decision accurately summarizes Dr. Pearson's consultative examination report. *Compare id.* at 433-37. In fact, the ALJ specifically mentions that Dr. Pearson found Plaintiff to have "poor concentration." *Id.* at 18. To the extent Dr. Pearson also opined that Plaintiff exhibited "moderate to serious symptoms with serious symptoms in her work function and moderate symptoms in her social function," this opinion is subsumed in the doctor's assessment of Plaintiff's GAF score of 51. *Id.* A GAF score is a standardized measure of psychological, social,

and occupational functioning used in assessing a patient's mental health.[1] *See Boyd v. Apfel*, 239 F.3d 698, 700 n.2 (5th Cir. 2001). The GAF scale ranges from a high of 100 to a low of 1. A GAF score of 51-60 indicates that the patient has "moderate symptoms (*e.g.* flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with peers or co-workers)." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, Fourth Ed. ("DSM-IV-TR") at 32 (1994). The ALJ's determination that Plaintiff did not have a mental impairment of disabling severity is consistent with Dr. Pearson's assessment of Plaintiff's GAF at 51.

Plaintiff also challenges the ALJ's rejection of another consultative examination report by Horace A. DeFord, M.D. Dr. DeFord opined in February 2010 that Plaintiff had a GAF of 46. Tr. at 251. A GAF score of 40-50 indicates more serious symptoms or "serious impairment in social, occupational, or school functioning." DSM-IV-TR at 34. The ALJ specifically referenced Dr. DeFord's opinion and explained that his GAF assessment was entitled to "little weight" because it reflects Plaintiff's symptoms when she is not compliant with her medication. Tr. at 18. An ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion. *See Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987). Here, the evidence, taken as a whole, supports the ALJ's conclusion that Plaintiff is not disabled. No error occurred in this regard.

### Hypothetical Question

Finally, Plaintiff argues that the ALJ presented a defective hypothetical to the vocational expert which led to Step 4 and Step 5 findings that were not supported by substantial evidence. The ALJ determined that Plaintiff is not disabled because she is capable of performing her past relevant

---

[1] GAF is an acronym for "global assessment of functioning."

work as a hospital cleaner or, alternatively, the jobs of hand packager, laundry worker, and industry cleaner. *See* Tr. at 16-19, 19-20. In making that finding, the ALJ expressly relied on the testimony of Karyl Kuuttila, a vocational expert. *Id.* at 19, 20. According to Plaintiff, the VE based her testimony on a defective hypothetical question that failed to take into account Plaintiff's limitation restricting her from required contact with the public -- a limitation specifically recognized by the ALJ in the hearing decision. *See id.* at 17. The Commissioner concedes that the ALJ failed to include the limitation on public contact in his hypothetical question to the VE, but argues the error was harmless because none of the jobs supporting the ALJ's determination require significant people skills. Def. Br. at 14.

The Court agrees with the Commissioner. In this case, the ALJ's failure to include the disputed limitation in his hypothetical to the VE was harmless error. The VE testified that the hypothetical claimant described in the ALJ's question could work as a hospital cleaner, or, alternatively, a hand packager, a laundry worker, and an industrial cleaner, as those jobs are defined in the Dictionary of Occupational Titles ("DOT").[2] Tr. at 46-47. The DOT description for the hospital cleaner job identified by the VE indicates that a worker doing the job performs the following tasks:

> Cleans hospital patient rooms, baths, laboratories, offices, halls, and other areas: Washes beds and mattresses, and remakes beds after dismissal of patients. Keeps utility and storage rooms in clean and orderly condition. Distributes laundered articles and linens. Replaces soiled drapes and cubicle curtains. Performs other duties as described under CLEANER (any industry) I Master Title. May disinfect and

---

[2] The DOT was promulgated by the Department of Labor to provide "standardized occupational information to support job placement activities." *See* Dictionary of Occupational Titles at xv (4th ed. 1991). The DOT, along with a companion volume – *The Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* ("SCO") – contains descriptions of the requirements for thousands of jobs in the national economy.

> sterilize equipment and supplies, using germicides and sterilizing equipment.

DOT § 323.687-010. Nothing in this description indicates that the job requires contact with the public.[3] Indeed, none of the narrative descriptions for the jobs identified by the VE suggest that the jobs involve public contact. *See* Def. Resp. App. at 1, 5, 10, & 14. Nor do any of the jobs' enumerated worker functions require public contact. *Id.* at 2, 6, 11 & 15. In fact, all the jobs indicate that the "relationships to People" function is "Not Significant." *See id.* Thus, if the ALJ had posed a question that included a limitation restricting the hypothetical claimant from required contact with the public, the VE's response would have been the same. Accordingly, remand is not required. *Alexander v. Astrue*, 412 F. App'x 719, 722 (5th Cir. 2011) (affirming denial of benefits notwithstanding defective hypothetical because a proper hypothetical including the erroneously omitted limitation would not have changed the vocational expert's response); *see also Nelson v. Barnhart*, No. 04-200-B-W, 2005 WL 1352401, at *3 (D. Me. June 7, 2005) (finding ALJ's failure

---

[3] The "other duties as described under CLEANER (any industry) I Master Title" provide that a worker doing the job:

> Maintains premises of commercial, institutional, or industrial establishments, office buildings, hotels and motels, apartment houses, retirement homes, nursing homes, hospitals, schools, or similar establishments in clean and orderly condition, performing the following duties: Cleans rooms, hallways, lobbies, lounges, rest rooms, corridors, elevators, stairways, and locker rooms and other work areas. Sweeps, scrubs, waxes, and polishes floors, using brooms and mops and powered scrubbing and waxing machines. Cleans rugs, carpets, upholstered furniture, and draperies, using vacuum cleaner. Dusts furniture and equipment. Polishes metalwork, such as fixtures and fittings. Washes walls, ceiling, and woodwork. Washes windows, door panels, and sills. Empties wastebaskets, and empties and cleans ashtrays. Transports trash and waste to disposal area. Replenishes bathroom supplies. Replaces light bulbs. Classifications are made according to type of establishment in which work is performed. Typical classifications are CLEANER, COMMERCIAL OR INSTITUTIONAL (any industry); CLEANER, HOSPITAL (medical ser.); CLEANER, HOUSEKEEPING (any industry); CLEANER, INDUSTRIAL (any industry); HOUSECLEANER (hotel & rest.).

DOT Master Titles and Definitions, Cleaner I.

to include limitation on interaction with general public in hypothetical to VE was harmless error because the job identified by the ALJ in his written decision did not involve more than occasional interaction with the public).

## CONCLUSION

The hearing decision is AFFIRMED in all respects.

SO ORDERED, September 12, 2014.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE